IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **PATRICIA BELL, et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 06-0356-WS-M |
| ) | |
| **INTEGRATED HEALTH SERVICES,** ) | |
| **INC., et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

## ORDER

This matter is before the Court on the motion of defendant Integrated Health Services, Inc. ("IHS") to dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficiency of service of process. (Doc. 2). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 3, 13, 14), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motion to dismiss is due to be granted.

## BACKGROUND

The three plaintiffs filed suit in state court in July 2005, alleging that IHS, as their employer at a health care facility in Greensboro, Alabama, violated Title VII, Section 1981 and state law by failing to promote them to either of two positions in June 2001. (Doc. 1, Exhibit A at 60-67).[1] The plaintiffs amended the complaint in November 2005 to add IHS Management Group, Inc. ("Management") and various fictitious parties as defendants. (*Id.* at 45-52). The plaintiffs filed a second amended complaint in December

---

[1]The state law and Section 1981 claims appear clearly to be barred by the statute of limitations. *See* Ala. Code § 6-2-38(l); *Price v. M&H Valve Co.*, 177 Fed. Appx. 1, 6-7 (11th Cir. 2006). The Title VII claims may or may not be barred, depending on application of *Kerr v. McDonald's Corporation*, 427 F.3d 947 (11th Cir. 2005).

2005, (*id*. at 29-37), followed by an original and corrected application for entry of default in May 2006.  (*Id*. at 8-15).

In July 2005, the plaintiffs attempted to serve the original complaint on IHS by certified mail at the Greensboro street address of the facility at which they worked at the time of the denied promotions.  (Doc. 5, Exhibit E).  The green card indicates that one Kelly Thomas signed for the mailing.  (Doc. 1, Exhibit 1 at 57).

In November 2005, the plaintiffs attempted to serve the first amended complaint on IHS by certified mail at 910 Ridgebrook Road, Sparks, Maryland.  The mailing was returned with the printed words, "Return to Sender/Refused/Unable to Forward" and the handwritten notation, "Refused."  (Doc. 13, Exhibits J, K).

In December 2005, the plaintiffs attempted to serve the second amended complaint on IHS by certified mail at an address in Owings Mill, Maryland.  (Doc. 5, Exhibit H).  This mailing was returned as "undeliverable."  (Doc. 1, Exhibit A at 3, 22-23).

In May 2006, the plaintiffs attempted to serve the corrected application for entry of default and supporting declaration on IHS by certified mail at 910 Ridgebrook Road, Sparks, Maryland.  (Doc. 1, Exhibit 1 at 5).  The mailing was signed for by one Erik Cummings, a customer service representative for Pitney Bowes, whose office was located at 920 Ridgebrook Road.  (Doc. 8, Cummings Affidavit).

As a result of the May 2006 mailing, IHS learned of the action and removed it in June 2006.  (Doc. 1, ¶ 1).  The plaintiffs moved to remand on the grounds of untimeliness, arguing that IHS was properly served with process in November 2005.  (Doc. 5, ¶¶ 6, 7, 9, 11, 13).  The plaintiffs mentioned the July and December 2005 attempts at service but did not argue that either effected good service.  (*Id*., ¶¶ 5, 6 n.1 ).

In response to the motion to remand, IHS presented affidavits reflecting that it had not been served with process on any of these three occasions.  (Doc. 8).  With respect to each, IHS presented evidence that it had no office at the addresses to which process was directed at the time service was attempted.  (*Id*., Bennett Affidavit, Zack Affidavit).

The Court extended the plaintiffs an opportunity to reply to IHS's showing, (Doc. 7), but they elected not to do so. After the briefing period closed, the Court took the motion to remand under submission and held that IHS had met its burden of demonstrating that "every attempted service of process by the plaintiffs upon it was unsuccessful." (Doc. 9). The Court thus denied the motion to remand.

The instant motion to dismiss was filed contemporaneously with the notice of removal. The plaintiffs moved the Court to delay addressing the motion to dismiss until after ruling on their motion to remand, (Doc. 6), and the Court granted their motion. (Doc. 7). Upon denying the motion to remand, the Court entered a briefing schedule on the motion to dismiss. (Doc. 10).

IHS argues that the plaintiffs have not perfected service and that their claims against IHS should thus be dismissed. The plaintiffs respond that they accomplished service in November 2005 and/or in August 2006; that IHS cannot insist on proper service because it has had knowledge of this lawsuit since May 2006 but is evading service; that it should be allowed discovery before the Court rules on IHS's motion; and that service by publication should be ordered. (Doc. 13 at 7-9; Doc. 15).[2]

## DISCUSSION

"[W]hen service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity." *Familia de Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980). The ultimate burden is thus on the plaintiffs to prove that they have perfected service on IHS.

The parties have failed to address the intermediate burdens and procedures

---

[2] "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced.

applicable to a motion to dismiss under Rule 12(b)(5).  Accordingly, the Court utilizes the standards governing motions to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, which presumably are analogous.  In the personal jurisdiction context, the defendant first bears the burden of producing affidavits that, in non-conclusory fashion, demonstrate the absence of jurisdiction.  *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  The plaintiff then bears the burden of presenting "enough evidence to withstand a motion for directed verdict."  *Id*. at 1268-69 (internal quotes omitted).  If the plaintiff presents countering evidence, "the court must construe all reasonable inferences in favor of the plaintiff."  *Id*. at 1269.  Absent an evidentiary hearing,[3] the plaintiff's presentation of sufficient evidence to defeat a motion for directed verdict ends the inquiry favorably to the plaintiff.  *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994).

**A.  Service in November 2005.**

As noted, neither on motion to remand nor in opposition to the motion to dismiss have the plaintiffs contended that service was perfected in July 2005, December 2005, or May 2006.  Thus, the only state court episode potentially at issue is the November 2005 attempted service of the first amended complaint.

The threshold problem with the plaintiffs' argument is that the Court has already rejected it, by denying their motion to remand.  While that ruling is interlocutory and thus capable of being revised, the decision whether to do so is committed to the Court's discretion.  *E.g., Bodine v. Federal Kemper Life Assurance Co.*, 912 F.2d 1373, 1376 (11th Cir. 1990).  Here, acceptance of the plaintiffs' argument on motion to dismiss would require that the motion to remand be granted, so that their argument on motion to dismiss

---

[3]An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory.  *E.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Given the parties' failure to request a hearing, the Court declines to hold one sua sponte.

operates effectively as a motion to reconsider the Court's order denying remand.  Indeed, in opposition to IHS's motion to dismiss, the plaintiffs request the Court to order remand.  (Doc. 13 at 9).

The grant or denial of a motion to reconsider is left to the discretion of the trial court.  *E.g., Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (en banc).  Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion.  *E.g., Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997).  Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."  *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).  The plaintiffs identify no intervening change in controlling law, they present no evidence that was unavailable when the motion to remand was decided, and they do not (and could not successfully) assert that the Court's ruling on the submissions before it was clearly wrong or manifestly unjust.

Indeed, the Court's conclusion was and remains patently correct.  The plaintiffs rely on two points to create a fact issue as to whether IHS maintained an office at 910 Ridgebrook Road in November 2005: (1) EEOC filings reflect that this was IHS's corporate address in 2001; and (2) the corrected application for entry of default was sent to this address in May 2006 and was accepted.  (Doc. 15 at 2, 4-5).  As to the first point, evidence of IHS's presence in 2001 is not evidence of its presence in 2005, especially in the face of uncontroverted evidence that IHS filed for bankruptcy in 2000 and has been inactive since at least 2004.  (Doc. 14, Zack Affidavit).  As to the second, it is uncontroverted that the application was signed for by an employee of Pitney Bowes, not by anyone affiliated in any way with IHS.  (Exhibit 8, Cummings Affidavit).

Moreover, even were there evidence that IHS maintained an office at 910 Ridgebrook Road in November 2005, even were there evidence that someone affiliated

with IHS refused the certified mailing containing process, and even were such refusal improper,[4] under Alabama law  service was not thereby rendered complete.  Instead, service could be perfected only upon the clerk's subsequent mailing of process by ordinary mail to the same address.  Ala. R. Civ. P. 4(e).  As the plaintiffs admit, (Doc. 13 at 7), this never occurred.[5]

**B.  Service in August 2006.**

According to an affidavit submitted by the plaintiffs, in August 2006 one Vincent Piazza personally delivered process to a business located at 930 Ridgebrook Road, Sparks, Maryland.  (Doc. 13, Exhibit M).  Without explanation or analysis of applicable law, the plaintiff posits that Piazza's action perfected service under Alabama Rule of Civil Procedure 4(c)(6).  (Doc. 13 at 8).[6]

Piazza's affidavit reflects that, when he arrived at 930 Ridgebrook Road, he was advised: that IHS had no office there; that the office was occupied by a business called Fundamental Health; that "the only person that can receive for IHS was Christine Zak [sic] since she is the only person with any affiliation with the company and is Corporate

---

[4]Alabama law requires that service on a corporation be accomplished by service on an individual holding one of certain enumerated positions in, or relationships to, the organization.  Ala. R. Civ. P. 4(c)(6).  The November 2005 certified mailing, however, identified no such individual, either by name or by position, but was addressed simply to "Integrated Health Services, Inc."  (Doc. 13, Exhibit K).

[5]The plaintiffs complain that they should not be penalized for the clerk's failure to perform this function, but they identify no principle of Alabama law that would allow the explicit requirements of effective service to be ignored simply because they were not satisfied.  The Court notes that, even when the state court ordered the plaintiffs to perfect service within 21 days or face dismissal, (Doc. 1, Exhibit 1 at 16), the plaintiffs' response was not to ask the clerk to mail process to 910 Ridgebrook Road but rather to file an application for entry of default.

[6]Service in federal court can be made pursuant to the law of the forum state.  Fed. R. Civ. P. 4(e)(1), (h)(1).

Counsel"; and that Zack was traveling. Piazza left process on a counter, even after the receptionist again warned him that only Zack could accept the documents and asserted that she would simply throw the papers away.

The plaintiffs' failure to offer discussion or authority in support of their raw conclusion that this constituted good service is itself sufficient reason to reject the argument. *See, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue."). At any rate, the argument depends on at least two fatally incorrect assumptions: (1) that service on Zack would constitute service on IHS; and (2) that service on the receptionist constituted service on Zack.

Alabama law requires that service on a corporation be accomplished by service on an officer, a partner, a managing agent, a general agent, an agent appointed to receive service of process, or an agent authorized by law to accept service of process. Ala. R. Civ. P. 4(c)(6). As a corporation, IHS has no partners, and it is uncontroverted that Zack is not an officer of IHS (indeed, that IHS has had no officers since 2004). (Doc. 14, Zack Affidavit). The Court thus turns to the various forms of agency that may support proper service, noting first that Zack has denied under oath that she is such an agent. (*Id.*).

"A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004); *accord Grammenos v. Lemos*, 457 F.2d 1067, 1073 (2nd Cir. 1972); 1 James Wm. Moore et al., Moore's Federal Practice ("Moore's") § 4.53[2][b] (3d ed. 2006). A general agency requires at least as great a showing. *Gottlieb v. Sandia American Corp.*, 452 F.2d 510, 513 (3rd Cir. 1971). Such an agent must have "broad executive responsibilities" and must have authority to act with continuity rather than sporadically. *Id*.

Piazza's affidavit states that unnamed employees of Fundamental Health identified

Zack as "corporate counsel."[7]  While a corporate counsel may be an employee,[8] the term may also refer to outside counsel.[9]  Here, it is uncontroverted that Zack was not employed by IHS in August 2006.  (Doc. 14, Zack Affidavit).  It is also uncontroverted that, in August 2006 and for several years preceding, IHS had no officers, employees or agents and was inactive, awaiting dissolution.  (*Id.*).  The Court cannot conclude that the outside counsel of an inactive corporation with no officers, employees or agents exercises broad executive responsibilities on a continuing basis.

Appointment to accept service can be express or implied, but such authority must actually exist.  Moore's, § 4.53[2][c].  The mere fact that Zack is IHS's corporate counsel cannot serve the purpose, because "[s]ervice of process is not effective on an attorney solely by virtue of his capacity as legal counsel for the defendant."  *Shelley v. Bayou Metals*, 577 F.2d 1209, 1210 (5th Cir. 1977); *accord United States v. Ziegler Bolts & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997); *Schultz v. Schultz*, 436 F.2d 635, 639 (7th Cir. 1971).

Nor can the statements concerning Zack by employees of Fundamental Health show that she was authorized to receive process.  First, the employees did not say that Zack was authorized by IHS to accept service of process but only that she was "authorized to accept" or "can receive for IHS," without addressing process specifically.  Second, there is nothing in the record from which to draw a reasonable inference that employees of a

---

[7]According to Zack, she is not corporate counsel to IHS but to what were formerly IHS's subsidiaries.  (Doc. 8, Zack Affidavit; Doc. 14, Zack Affidavit).  While Piazza's affidavit is not free of ambiguity on this point, the Court generously reads it as evidence that Zack is in fact corporate counsel to IHS.

[8]*See, e.g., Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1273 (11th Cir. 2004) (referring to "in-house corporate counsel"); *Graham v. State Farm Mutual Insurance Co.*, 193 F.3d 1274, 1277 (11th Cir. 1999) (same).

[9]*See, e.g., Sterling v. Stewart*, 158 F.3d 1199, 1201, 1203 (11th Cir. 1998) (referring to outside counsel as "corporate counsel"); *Stepak v. Addison*, 20 F.3d 398, 404-05 (11th Cir. 1994) (same).

separate entity had knowledge of Zack's authority from IHS.

The plaintiffs have identified no potential legal source for Zack's appointment by law to accept service of process, and the Court declines to conduct such a search on their behalf. In short, the plaintiffs have failed to present any evidence or argument that could create an issue as to whether service of process on Zack would constitute service on IHS.

Even could the plaintiffs surmount this hurdle, they did not in fact serve Zack. Instead, they served a receptionist with the independent company of Fundamental Health,[10] and did so despite being warned that the receptionist had no authority to accept service and that she would throw the papers away. The receptionist plainly was not authorized to accept service on behalf of IHS, and there is no evidence from which to draw a reasonable inference that, despite multiple warnings to the contrary, she delivered the process to Zack. Under these circumstances, delivery to the receptionist cannot constitute proper service. *See, e.g., O.J. Distributing, Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 347, 354 (6th Cir. 2003) (process signed for by a receptionist did not constitute service on an authorized agent); *Woodbury v. Sears, Roebuck & Co.*, 152 F.R.D. 229, 235 (M.D. Fla. 1993) (assuming for purposes of argument the existence of a "re-delivery" doctrine, it cannot apply when the recipient informs the server that she is unauthorized to accept service of process and neither delivers the process to the proper person while the server waits nor promises that she will do so).[11]

### C. Evasion of Service.

---

[10] They may not have accomplished even this much, since Piazza did not deliver the documents to the receptionist but left them on the counter.

[11] IHS points out that the summons that Piazza attempted to serve failed to comply with Federal Rule of Civil Procedure 4(a) because it was not signed by the clerk and did not bear the seal of the Court. (Doc. 14 at 3). The Court agrees, but this appears to be an attack on the sufficiency of process, and IHS has not moved for dismissal pursuant to Rule 12(b)(4).

The plaintiffs argue that IHS "has engaged in a pattern of evasiveness to thwart service of process." (Doc. 13 at 1). They identify the circumstances forming this pattern as consisting of: (1) the failed attempt to perfect service in August 2006; (2) Zack's subsequent telephone call to Piazza, informing him that she had secured a restraining order against him and that he would be arrested if he visited the Fundamental Health office again; and (3) the refusal of IHS's trial counsel to inform plaintiffs' counsel of the identity and address of the individual(s) who can accept service on behalf of IHS. (*Id*. at 5-6).

These circumstances do not, individually or cumulatively, raise any inference that IHS has improperly evaded service. The plaintiffs do not suggest, and certainly offer no evidence, that Zack was not in fact traveling but was instead hiding in Fundamental Health's offices when Piazza attempted to serve her. Given the lack of evidence that Zack was authorized to accept service of process, it is immaterial whether Zack was hiding or that she obtained a restraining order. Counsel's refusal to educate the plaintiffs on how to effect proper service was perfectly appropriate, as a defendant has no responsibility to volunteer such information. *Cf.* Moore's, § 4.10[1][b] (discussing waiver of service under Rule 4(d)) ("Corporations are not obligated to inform the plaintiff of the identity of the person appointed to accept service on behalf of the corporation.").

### D. Discovery.

The plaintiffs move for discovery into whether IHS is avoiding service; of the identity of the individual(s) able to accept service for IHS; and to determine whether another entity may have succeeded to IHS's liability for the wrongs they allege. (Doc. 15 at 5). As discussed in Part C, the plaintiffs have no evidence even suggesting that IHS is evading service and thus no basis for conducting discovery on this issue. As also discussed in Part C, a defendant has no obligation to tell a plaintiff how to serve it, and a necessary corollary is that a plaintiff cannot sue a defendant and then, without serving the

defendant, compel it through discovery to identify its authorized agents for service of process. The possibility that a different entity may be a potential defendant is irrelevant to whether IHS is entitled to dismissal for failure to serve process.

### E.  Service by Publication.

Without amplification, the plaintiffs "move the Court to allow defendant to be served via publication." (Doc. 13 at 9). Alabama law provides for service by publication in certain situations but, in order for it to be triggered, the plaintiff or counsel must submit an affidavit setting forth facts demonstrating that the defendant is avoiding service, and the process server must endorse the fact that service cannot be obtained and state the reason. Ala. R. Civ. P. 4.3(c), (d)(1). The plaintiff has not attempted to satisfy these requirements, even after IHS pointed them out in its reply brief. (Doc. 14 at 10-11). They have thus forfeited any opportunity to invoke Rule 4.3.

### F.  Relief.

The complaint was filed in state court in July 2005 and removed to this Court in June 2006. The action has thus languished over 18 months without service of process, including almost 8 months in this Court. After three plainly ineffective attempts at service in 2005, the plaintiffs have made only a single effort at service in the past year.    The plaintiffs have not completed service within the 120 days required by Federal Rule of Civil Procedure 4(m). This failure exposes the complaint to dismissal without prejudice. *Id*. However, if the plaintiffs provide good cause for their failure, the Court must grant additional time to perfect service. *Id*. Good cause exists "only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir. 1991). IHS's inactive status and its dearth of officers and employees are outside factors that have complicated the plaintiffs' task, but the plaintiffs' failure to make more than desultory efforts at service or even

investigation over such an extended period reflects that internal factors such as inadvertence or negligence are responsible for the failure to effect service.

"Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause." *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005). Factors to consider include whether the defendant is evading service, whether it is concealing defects in service, and whether the statute of limitations will bar the refiling of the lawsuit should it be dismissed. *Id*. Here, there is no indication that IHS is evading service or concealing defects in service. While dismissal will subject the lawsuit to a limitations defense, "the running of the statute of limitations does not require that a district court extend the time for service of process under" Rule 4(m). *Id*. at 1133. Given that the plaintiffs have had more than four times the amount of time provided in Rule 4(m) in which to perfect service, given their sparse efforts to accomplish service, and given that over 5½ years have now elapsed since the events made the subject of the complaint, the Court concludes that no extension of time to perfect service should be granted.

### G.  IHS Management, Inc.

The plaintiffs have not served co-defendant Management, and their complaint against this defendant is likewise subject to dismissal under Rule 4(m). Even after the Court in August 2006 pointed out the plaintiffs' failure to serve Management, (Doc. 9), the plaintiffs offered no cause and thus no good cause for their failure. For the same reasons provided with respect to IHS, the Court concludes that the plaintiffs should not be given additional time to serve this defendant.

### CONCLUSION

For the reasons set forth above, IHS's motion to dismiss is **granted**, and the plaintiffs' motions for leave to conduct discovery and to serve by publication are **denied**.

This action is **dismissed without prejudice**.

DONE and ORDERED this 30th day of January, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE